[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11116

Non-Argument Calendar

_____

KAITLIN SMITH,

Plaintiff-Appellant,

*versus*

WALMART STORES EAST, LP,
(Delaware),
JOHN DOES 1 AND 2,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 2:19-cv-00138-SCJ

———————————————

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Kaitlin Smith appeals the district court's grant of summary judgment to Walmart Stores East LP on her complaint to recover damages she suffered after she slipped and fell on a liquid substance while shopping at a Walmart store.  The district court concluded that Walmart lacked either actual or constructive notice of the hazard.  On appeal, Smith contends that summary judgment was inappropriate because genuine issues of material fact exist as to Walmart's constructive knowledge.  After careful review, we agree that summary judgment should not have been granted, and we vacate and remand for further proceedings.

I.

On the night of May 31, 2018, Smith was shopping at Walmart with her boyfriend.  As they headed to the store's pet department, they walked without incident through an area of the store called "action alley," a larger aisle running perpendicular to the other aisles which contained pallets with goods to stock, among other things.  After obtaining cat food from the pet department,

they walked back through action alley, traversing "the general area" they had previously walked through.  On the way, at approximately 11:13 p.m., Smith slipped and fell.

Around that time, there were two Walmart stockers working in or near the area where Smith fell.  At approximately 11:03 p.m., Walmart stocker Jorian Wofford used a pallet jack to move a pallet from the area of action alley where Smith would walk soon after.  Wofford did not remember seeing any substance either on the pallet or the floor, but he acknowledged he did not specifically look at the floor where the pallet had been after he moved it. Meanwhile, Walmart stocker William Whigham walked past that same area multiple times while stocking, including between when the pallet was moved and Smith's fall. Whigham testified that he was in a position to see and "would have cleaned" the substance if anything was on the floor, but he did not see anything on the floor before the falling incident.

The evidence reflects that Walmart's inspection policies require each employee to continuously look for safety hazards, which employees must immediately clean up, remove, or guard until someone else can assist. That includes checking the floor after a pallet is moved to ensure that nothing fell or leaked from the pallet and created a hazard.

Whigham testified that he followed these inspection policies at all relevant times and inspected the floor multiple times when he was in the area before Smith's fall.  In the available surveillance footage, however, Whigham does not appear to be looking at the

ground where the pallet had been. Instead, a reasonable jury could conclude that he was looking for or moving carts and materials to stock, as his job was a stocker, and not inspecting the floor for hazards.  In addition, while Wofford believed there was nothing on the floor, he admitted he did not specifically check the floor under the pallet after he moved it. Other Walmart employees likewise claimed to have conducted inspections when passing through the area in the hour or so preceding the fall, but these inspections occurred before the critical time after the pallet was moved at 11:03 p.m.  After the pallet was moved, the surveillance footage shows just one other person besides Whigham and Wofford, apparently a patron, passing by the incident area, but the person took a different route than Smith and her boyfriend.

After the fall, Smith noticed her leg was covered in "liquid, sticky stuff," which she believed was some "type of soapy liquid." Smith went to the bathroom to clean up, and the substance "foamed up" when she put water on it. When she returned to the scene of the fall, she saw a "shiny" substance that "looked, like, streaked" and was "darker than the floor in areas." Smith's boyfriend described seeing on the floor a "shiny" substance with a "bluish tint" that "had been smeared" and had a "fragrant smell." According to her boyfriend, the smeared substance "wasn't hard to see."  Whigham, for his part, responded to Smith's fall and observed a "clear/light" liquid substance on the floor that had been smeared.

A picture of the floor taken on the night of the incident, construed in the light most favorable to Smith, depicts a white blob and a streak that are not present in later pictures of the same area, suggesting these two marks were temporary. There is also evidence that, on the night of the incident, Walmart employees discovered that a pallet of pet food was partially covered in a foamy substance. The parties dispute whether the pallet Wofford moved at 11:03 p.m. was the same pallet that had the foamy substance on it, and the testimony on this point is far from clear. Although Whigham was adamant that the pallets were distinct, he also testified that the pallet with the foamy substance was moved "throughout the night" and could not fully account for its location, so his testimony does not rule out the possibility that the foamy pallet traversed the area where Smith fell. In any case, the pallet dispute is not material to our resolution of this appeal.

## II.

Smith sued Walmart for negligence in state court, and Walmart removed the action to the U.S. District Court for the Northern District of Georgia based on diversity jurisdiction. *See* 28 U.S.C. § 1332. Following discovery, Walmart moved for summary judgment. The district court granted that motion, concluding that Walmart lacked either actual or constructive notice of the hazard. The court found that Walmart employees conducted reasonable inspections of the area immediately before Smith's fall and did not see anything on the floor. Smith now appeals.

## III.

We review the district court's grant of summary judgment *de novo*, construing the evidence and drawing all reasonable inferences in favor of Smith, the non-moving party. *Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1317 (11th Cir. 2015). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Because this is an action in diversity, *see* 28 U.S.C. § 1332, state substantive law determines the elements of Smith's negligence claim and the materiality of evidence. *See Carlson*, 787 F.3d at 1326. Nevertheless, "the sufficiency of evidence to require jury submission in diversity cases is a question of federal law." *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).[1] We therefore do not apply state-law rules regarding the sufficiency of evidence or the drawing of inferences. *See, e.g.*, *Lovins v. Kroger Co.*, 512 S.E.2d 2, 4 (Ga. Ct. App. 1999) ("In passing on a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists."). Rather, we apply a federal standard, under which "a verdict based on circumstantial evidence is not infirm simply because the evidence supports an equally probable

---

[1] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

inference to the contrary. It is the jury that chooses among allowable inferences." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1323–26 (11th Cir. 1982).

## A.

In Georgia, "a slip-and-fall plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." *J.H. Harvey Co. v. Reddick*, 522 S.E.2d 749, 751 (Ga. Ct. App. 1999) (quotation marks omitted). To do that, the plaintiff must establish that the defendant had actual or constructive knowledge of the hazard. *Id.* "The mere existence of a dangerous condition does not render the proprietor liable, for the proprietor is not a guarantor of the invitee's safety." *Moore v. Food Assoc.*, 437 S.E.2d 832, 834 (Ga. Ct. App. 1993).

Because it is undisputed that Walmart lacked actual knowledge of the hazard, we must determine whether a genuine issue of material fact remains as to its constructive knowledge. *See Food Lion, Inc. v. Walker*, 660 S.E.2d 426, 428 (Ga. Ct. App. 2008). To establish constructive knowledge, "the plaintiff must show the defendant could have found and removed the hazard." *Blake v. Kroger Co.*, 480 S.E.2d 199, 201 (Ga. Ct. App. 1996).

Constructive knowledge may be inferred in two scenarios. The first is where a store employee was "in the immediate vicinity of the dangerous condition and could easily have noticed and removed the hazard." *Daniel v. John Q. Carter Enters., Inc.*, 460

S.E.2d 838, 839 (Ga. Ct. App. 1995). Evidence of a store employee's mere presence "in the area of the hazard is not sufficient, standing alone, to raise a jury question" of constructive knowledge. *Blocker v. Wal-Mart Stores, Inc.*, 651 S.E.2d 845, 847 (Ga. Ct. App. 2007). Rather, "it must be shown that the employee was in a position to have easily seen the substance and removed it." *Id.*

Second, constructive knowledge may be inferred where the defendant's failure to discover the foreign substance was due to the "breach of [its] legal duty to inspect the premises." *Daniel*, 460 S.E.2d at 840. Ordinarily, the plaintiff is required to show that "the foreign substance remained long enough that ordinary diligence by the store employees should have discovered it." *Food Lion*, 660 S.E.2d at 428. But "a plaintiff need not show how long a substance has been on the floor unless the defendant has established that reasonable inspection procedures were in place and followed at the time of the incident." *Straughter v. J.H. Harvey Co., Inc.*, 500 S.E.2d 353, 355 (Ga. Ct. App. 1998). Nonetheless, "no inference can arise that defendant's failure to discover the substance was the result of its failure to inspect" unless there is "evidence that a reasonable inspection would have discovered the foreign substance." *Blake*, 480 S.E.2d at 202.

## B.

Smith contends that she established Walmart's constructive knowledge under both prongs by producing evidence that (1) Walmart stocker Whigham was in the immediate vicinity of the hazard and could easily have seen and removed it; and (2) Walmart

employees, including Whigham, failed to conduct reasonable inspections of the floor where Smith fell. Walmart responds that it cannot be held liable because it conducted reasonable inspections of the area and no hazard was discovered, which also means, in its view, that the hazard could not have been easily seen and removed if it existed at all.

Here, we agree with Smith that genuine issues of material fact preclude the grant of summary judgment to Walmart. To begin with, a reasonable jury could conclude that Smith slipped on a hazard that was present on the floor of action alley once the pallet in that location was moved at 11:03 p.m., even assuming the evidence does not establish the source of the hazard.[2] Surveillance footage indicates that Smith fell in the same area where the pallet had been located. In addition, Smith, her boyfriend, and Whigham all reported seeing a streaked or smeared liquid substance on the floor after Smith's fall, and Smith described having "liquid, sticky stuff" on her leg after the fall which foamed up when she tried to clean it off.

Moreover, the record evidence places two Walmart employees in the immediate vicinity of the hazard around the time of

---

[2] As noted above, Smith contends that the pallet that was moved at 11:03 p.m. was the same pallet found to have been partially covered in a foamy substance, which the district court described as having "logical appeal" but not evidentiary support. We need not resolve this issue because the jury does not need to identify the source of a hazard to determine that a hazard existed.

Smith's fall.  Wofford moved the pallet from the location where Smith fell approximately ten minutes later.  And surveillance footage shows Whigham walking past the incident area multiple times between when the pallet was moved and when Smith fell. Whigham also confirmed in his testimony that he was in a position to see and clean any hazard present where Smith fell.

Walmart does not dispute this evidence, but it contends that it conducted reasonable inspections shortly before Smith's fall and that the hazard was not easily visible.  Otherwise, Walmart asserts, Whigham and others would have seen and removed it.

Viewing the evidence in the light most favorable to Smith, we conclude that there are genuine issues of material fact as to those matters.  With respect to the reasonableness of inspections, Wofford admitted he did not check the area where the pallet had been when he moved it at 11:03 p.m., even though Walmart's inspection policies called for checking the floor after a pallet was moved to ensure that nothing fell or leaked from the pallet and created a hazard.  And a jury could find based on the surveillance footage that Whigham did not, as he claimed, inspect the floor after the pallet was moved and instead was focused on stocking items. Walmart claims that four other Walmart employees also inspected the area and found no hazard, but these inspections occurred before the pallet was moved, so their observations are consistent with Smith's theory that a hazard was uncovered when the pallet was moved.  From all this, a jury could reasonably conclude that Walmart's inspection procedures, the reasonableness of which is

not disputed, were not "followed at the time of the incident." *See Straughter*, 500 S.E.2d at 355.

In addition, the record includes evidence tending to show that Whigham or Wofford "could easily have noticed and removed the hazard" had they exercised reasonable care. *Daniel*, 460 S.E.2d at 839. Smith's boyfriend testified that the substance "wasn't hard to see"; Smith testified that the substance made the floor "darker"; and Whigham testified that he saw a "clear/light" liquid substance on the floor that had been smeared. While hardly conclusive, we think there's enough evidence for a reasonable jury to infer that the substance "was visible from a standing position" before Smith's fall, such that Walmart can be charged with constructive knowledge of the hazard. *See Food Lion*, 660 S.E.2d at 429 (citing evidence "that the spill was visible from a standing position" in finding a genuine issue of material fact as to whether a reasonable inspection procedure would have detected the hazard). That Smith and her boyfriend did not see anything on the floor before the fall does not defeat her claim. *See Davis v. Bruno's Supermarkets, Inc.*, 587 S.E.2d 279, 282 (Ga. Ct. App. 2003) ("The Supreme Court of Georgia has rejected any requirement that an invitee look continuously at the floor for defects, holding that the invitee is entitled to assume that the owner/occupier has exercised reasonable care to make the premises safe.").

For these reasons, Smith has created genuine issues of material fact as to Walmart's constructive knowledge, specifically whether Walmart "could have found and removed the hazard" had

it excised reasonable care to make the premises safe.  *Blake*, 480 S.E.2d at 201.  We therefore vacate the grant of summary judgment to Walmart, and we remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**